# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                    No. 1:19-cr-945-WJ

VICENTE RIVERA,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** is before the Court on Defendant's Motion to Suppress [Doc. 26], filed May 6, 2019. Defendant moves the Court to suppress all evidence and statements obtained from Defendant as a result of his mistaken identity arrest. The Supreme Court has explained that when "the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971). There is no dispute that the officers had probable cause to arrest the first party. *See* United States Exhibit 1 (Arrest Order for Mr. Shamon Pacheco). Defendant's motion, therefore, turns on whether the officers reasonably mistook Defendant for the first party.

## FACTS

The Court held an evidentiary hearing on December 10, 2019, at which the following material facts were established. Doc. 44. On February 27, 2019, the New Mexico Department of Corrections Probation and Parole Division issued an arrest order for Mr. Shamon Pacheco for failing to report. The order described Mr. Pacheco as Hispanic male, 5 feet 8 inches tall, 187 pounds, with neck tattoos. The order also stated that his vehicle was a black Dodge Charger and

that his last known address was 1001 Louisiana Blvd. NE, Apartment #18, Albuquerque, NM.

On March 4, 2019, a team of fugitive apprehension officers traveled to ABQ Elevate Apartments at 1001 Louisiana Blvd. NE in Albuquerque to arrest Mr. Pacheco. Upon arrival, they spoke with an apartment complex maintenance employee. The employee told them that he knew Mr. Pacheco, and that he saw Mr. Pacheco earlier that day wearing dark colored clothing and a black hat leaving the apartment complex in a black, four-door sedan. The employee also explained that Mr. Pacheco's grandmother lived in apartment #18 and his sister lived in apartment #42, and that he regularly saw Mr. Pacheco come and go from both apartments.

The officers then went to the apartment complex's leasing office to interview employees about Mr. Pacheco. One of the officers, however, positioned himself at the rear of apartment #18 in case Mr. Pacheco tried to exit a back window. After a few minutes there, the officer saw a male wearing dark colored clothing and a black hat drive a black, four-door sedan into the apartment's north parking lot. The officer then returned to the leasing office and watched apartment #42 through a window. Apartment #18 was not visible from the office.

Approximately ten to fifteen minutes later, the officer saw a male wearing dark colored clothing and a black hat with neck tattoos exit apartment #42 with a female heading towards the north parking lot. At that point, the officers believed the male was Mr. Pacheco. The officers approached the male in the parking lot and said, "Shamon, stop." The male looked up at them and said "huh." Knowing that Mr. Pacheco had a violent history and was known to be armed, the officers ordered the male to the ground. As the male got on the ground, he explained that he had a pistol in his back pocket. The officers then saw the pistol in plain view sticking out of his back-right pocket. The officers asked him what his name was. The male stated his name was Vicente

Rivera. The officers then noticed that the male was wearing a hospital wristband with the name Vicente Rivera.

One of the officers then asked Mr. Rivera if he was on probation or parole. Mr. Rivera explained he was "off-paper" (i.e. no longer on probation or parole). The officer then asked who his probation officer was. Mr. Rivera said it was Edmund Vigil. The officer knew Mr. Vigil from work, so he called him and learned that Mr. Rivera was a convicted felon. Shortly thereafter, the officers arrested Mr. Pacheco at apartment #18.

## DISCUSSION

Defendant argues that the officers did not reasonably mistake Defendant for Mr. Pacheco. Doc. 26 at 5-6. Defendant contends that Defendant and Mr. Pacheco do not resemble each other and that the dark colored clothing and black hat description was not specific enough for the officers to have had an objectively reasonable basis to believe Defendant was Mr. Pacheco. Defendant's argument is not persuasive. During the hearing, the United States introduced photos of Defendant and Mr. Pacheco and, after reviewing them, it is clear to the Court that Defendant and Mr. Pacheco do resemble each other. Both are Hispanic males with mustaches and neck tattoos. *Compare* United States Exhibit 10 (Photo of Defendant), *with* United States Exhibit 11 (Photo of Mr. Pacheco). Defendant also shortchanges the descriptors the officers considered when they concluded Defendant was Mr. Pacheco. The officers considered not only that Mr. Pacheco was wearing dark colored clothing and a black hat, but also that Mr. Pacheco was a Hispanic male with neck tattoos who drove a black, four-door sedan and frequented apartments #18 and #42.

Defendant also argued at the hearing that the manner the officers went about their operation was unreasonable. Such an argument, however, has no bearing on this motion. The dispositive question is whether the officers reasonably mistook Defendant for Mr. Pacheco, not whether the

3

manner the officers conducted their operation was reasonable. Absent controlling authority requiring the Court to do so, the Court will not Monday-morning quarterback the officer's operational plans and strategic decisions, especially considering they conducted their operation knowing that the person they were looking for had a violent history and was known to be armed.

The Court finds that the officers reasonably mistook Defendant for Mr. Pacheco. Defendant not only matched Mr. Pacheco's description, but the officers also witnessed Defendant leaving an apartment Mr. Pacheco was known to frequent. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before [the Court] the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Hill*, 401 U.S. at 804. Defendant's Motion to Suppress [Doc. 26] is **DENIED**.

**IT IS SO ORDERED.**

_____
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**